### ABIEL S. LEWIS & another *vs.* THE EAGLE INSURANCE COMPANY.

The testimony of a witness who declares himself unable to answer questions put to him on cross-examination, on the ground that his memory at times fails him in consequence of mental injury resulting from a sunstroke, and that such is his present condition, is not to be stricken out by the presiding judge, but may be submitted to the jury.

In an action on a policy of insurance for a constructive total loss, if the plaintiff in his claim of loss has given the insurers credit for a certain amount received for salvage, he is not bound to prove that he did not receive more.

A person sent to a foreign port to take charge of a vessel in distress, who ascertains by inquiry the prices of labor and materials necessary to repair vessels there, but has no other knowledge thereof, is not a competent witness on that subject.

In an action on a policy of insurance, under an answer alleging a false and fraudulent representation by the assured of the value of the vessel insured, the defendants may prove a false, though not fraudulent, representation.

ACTION OF CONTRACT upon a policy of insurance on the Schooner Emeline, valued therein at $6000. Trial at March term 1854 before *Bigelow*, J., who made the following report thereof:

" It appeared that the Emeline, while on a voyage during the year, put into Nassau, N. P., in a leaky condition, where the master called two different surveys upon her. The first survey

recommended that she should be repaired, and estimated the cost of the needful repairs at $600. The second survey estimated said repairs at $6000, and condemned her, and she was sold by the master at auction at said Nassau.

" The plaintiffs, for the purpose of proving the nature and extent of the injuries which they alleged the vessel had sustained, and the cost of the repairs which they alleged she required, called Elisha W. Gunnison, who testified that he was on the first survey, but had refused to sign the report with the other surveyors. He was examined at great length by the plaintiffs as to the condition of the vessel on her arrival at Nassau, the various injuries which she had sustained, the repairs required, and the cost of each in detail at the said time at Nassau ; and was the only witness produced by the plaintiffs as to the exact cost of the repairs which they alleged the vessel required.

" After the defendants had commenced their cross-examination of this witness on the subjects above stated, he declared himself unable to answer their questions, and that he had totally forgotten all that he had said on direct examination on this subject; and stated that he had formerly received a sunstroke, which had impaired his memory, so that at times it was entirely lost, and that he was now in that condition ; but he stated that he was not so affected during his direct examination by the plaintiffs, though he could not now tell what he had said.

" Upon this evidence the defendants claimed that if this statement was true, the testimony of Gunnison should not be considered by the jury or submitted to them at all, and should be stricken out of the case. But the presiding judge refused to strike it out or to withdraw it from the jury, and ruled that the whole testimony of Gunnison was competent for the consideration of the jury ; and it was submitted to the jury in connection with the other evidence in the cause.

" The plaintiffs, in their claim for loss, gave credit to the defendants for a certain amount, which they alleged they received from the proceeds of the said auction sale of said vessel ; but offered no evidence as to the actual amount so received. Whereupon the defendants contended that the plaintiffs were bound

43 *

to satisfy the jury by proof as to the amount so actually received by them, before they could recover the amount of loss which they claimed.

" But the judge ruled that it was not necessary for the plaintiffs to prove the amount so received by them ; and that if there was no evidence in the case bearing on this point, it would be the duty of the jury, if they found for the plaintiffs, to deduct the amount of the credit given by the plaintiffs from the amount which they should find to have been lost by the perils insured against; the burden of proof being on the plaintiffs to prove the amount of the loss.

" The defendants, in order to prove the cost of labor and materials for repairs at said Nassau, called Ebenezer Davis, a shipmaster, who testified that he was sent there to take charge of a vessel which was then in distress; that he then ascertained, by inquiries of shipwrights, material-men and others, what were the prices of certain materials used in repairs and the cost of labor upon vessels ; that he had no knowledge of these prices, except what he derived from the statements of others, not having bought or paid for any supplies or repairs in Nassau.

" But upon the plaintiffs' objecting, the presiding judge refused to permit the witness to testify what upon such inquiry he ascertained such cost and prices to be ; there being evidence in the case on both sides, from witnesses having actual knowledge of the cost and expense of materials, labor and repairs at Nassau.

" The jury returned a verdict for the plaintiffs for a total loss. If the foregoing rulings, or any of them, are incorrect, the defendants are to be entitled to a new trial."

The defendants also moved for a new trial, on the ground that the verdict was against evidence; and all the testimony was reported for the purpose of determining that question. The arguments and decisions upon these reports were made at November term 1856.

*C. G. Loring & E. D. Sohier,* for the defendants, to the point that Gunnison's evidence should have been stricken out, cited 2 Phil. Ev. (6th Amer. ed.) 91, & note ; *Kissam* v. *Forrest,* 25 Wend. 651 ; *Gass* v. *Stinson,* 3 Sumner, 98 ; *Cazenove* v.

*Vaughan*, 1 M. & S. 6 ; and that the testimony of Davis should have been admitted, *Lush* v. *Druse*, 4 Wend. 313.

*R. Choate & I. W. Richardson*, for the plaintiffs, to the first point, cited 1 Greenl. Ev. § 365 ; *Evans* v. *Hettich*, 7 Wheat. 473 : *Depeyster* v. *Columbian Ins. Co.* 2 Caines, 85 ; *Clements* v. *Benjamin*, 12 Johns. 299 ; *Cazenove* v. *Vaughan*, 1 M. & S. 4.

By THE COURT. The questions of law seem to have been rightly decided by the judge who presided at the trial.

1. The evidence of Gunnison was competent, though subject to great doubt as to its credibility. All the testimony that the witness could give was before the court. It is not like a case where the testimony of the witness is left incomplete, as where a witness dies before his examination is finished, as in *Kissam* v. *Forrest*, 25 Wend. 651, and 7 Hill, 463.

2. The plaintiffs had charge of the vessel, sold what was sold, and were bound to render an account. In the account which they rendered, they gave credit for the salvage. If the defendants were not satisfied, they could interrogate the plaintiffs and demand their accounts, and have an account taken before an auditor. But if they went to trial, it was incumbent on the defendants to show that more salvage had been earned by the plaintiffs than they had accounted for.

3. The evidence of Davis as to what he had heard was properly rejected, as mere hearsay, not verified by oath, nor coming from one who knew the prices at or about the same time by actual dealings.

But upon an examination of all the evidence given at the trial, we are of opinion that there was no competent and sufficient evidence to prove a constructive total loss, so as to warrant an abandonment, and that the verdict therefore, being against evidence, must be set aside, and a          *New trial granted.*

A second trial was had at November term 1857, before *Thomas*, J., who, after a verdict for the plaintiffs, made a report to the full court, so much of which as is material to the understanding of their decision was as follows :

The defendants in their answer alleged that " the said vessel

was valued by the plaintiffs to them at the time when said policy was made, and represented by the plaintiffs to the defendants to be of the value of six thousand dollars, and upon the faith of such valuing and representations the defendants executed the said policy wherein said vessel is valued at six thousand dollars ; and the defendants say that the same was a gross and fraudulent overvaluation of said vessel by the said plaintiffs ; " and further alleged that " they were induced to make the policy declared upon by the fraudulent representations of the plaintiff W. G. Lewis, who represented to the defendants, in order to obtain said insurance of six thousand dollars, that he had paid five thousand dollars for the said vessel, or she cost five thousand dollars, and that he had laid out one thousand dollars on her, whereas the said vessel was bought by him for two thousand one hundred and fifty dollars."

The defendants offered evidence tending to prove the allegations in the answer. And the presiding judge instructed the jury as follows :

" If, upon the evidence, the jury find an overvaluation, fraudulently made on the part of the assured or his agent, with the intent of destroying the property, and of recovering from the insurers the amount for which it is so valued, such a fraudulent purpose would render the contract void.

" The law requires of the parties to a policy of insurance the exercise of good faith. A misrepresentation is a false representation of a material fact by one of the parties, tending directly to induce the other to enter into the contract. This principle, applicable to all contracts, is peculiarly applicable to a policy of insurance, which is ordinarily made upon the statements and representations of the assured. A representation of what a vessel cost, or what was paid for it, is a representation as to a material fact; and if the plaintiffs, in effecting this policy, fraudulently, and in order to obtain the insurance, represented that the vessel cost $5000 and $1000 for coppering, when, in point of fact, the entire cost was $3150, it was a misrepresentation upon a material point, which, if false, would avoid the policy.

" But this question is to be tried upon the exact answer filed

by the defendants; and that answer, as made, requires proof that the representation was fraudulent, as well as false, and, in point of fact, induced the defendants to make the contract; that the defendants had taken this burden on themselves; and that the burden in this matter was on the defendants."

*Sohier & C. W. Loring*, for the defendants.

*Choate & Richardson*, for the plaintiffs.

MERRICK, J.   The representation made by the plaintiffs, upon obtaining insurance upon their vessel, that it cost them five thousand dollars and one thousand more for coppering, was of and concerning facts material to be known by the underwriters; and, if false, avoided the policy which they had issued, and relieved them from all liability thereon.   Upon this point the instructions given to the jury were correct.   But the instructions went further than this; and it was ruled that, upon the exact answer filed by the defendants, they must prove, in order to avoid the policy, not only that the representation made by the plaintiffs was false, but that it was also fraudulent.   This, we think, would necessarily have been understood by the jury as importing that the alleged fraud was a distinct subject of inquiry, not to be deduced from the mere proof of the false representation relative to the cost of the vessel; and that unless this fraud was established by other evidence, they would not be warranted in finding a verdict for the defendants.   There is nothing in their answer, which imposes upon the defendants the burden of proving this fact, in addition to the fact of a false representation, in order to maintain their defence.   It is true that they allege in general terms that the representation of which they complain was falsely and fraudulently made.   But whether this representation was designedly and intentionally erroneous, and made with the corrupt purpose of gaining an undue advantage or not, is immaterial in relation to the question at issue between the parties; for if it was false, it clearly exonerated the defendants from the performance of the contract on their part, and wholly avoided the policy.   It is unnecessary to multiply citations in support of this position, because, as is remarked by Mr. Phillips in his treatise on insurance, the doctrine is con

stantly assumed, and runs through the whole jurisprudence on the subject, that material representations having reference to past or existing circumstances discharge the underwriters from all liability in respect of the risks to which they relate. 1 Phil. Ins. §§ 537, 677. *Elton* v. *Larkins*, 5 Car. & P. 385. The ruling of the court therefore, which required the defendants to produce proof of the fraudulent character, as well as of the falsity, of the plaintiffs' representations concerning the cost of their vessel, in order to sustain their defence, must be held to have been erroneous; and for this cause only, as the instructions which were given to the jury appear in all other particulars to have been unexceptionable, the verdict for the plaintiffs must be set aside, and a *New trial granted.*

A third trial was had at November term 1858 and resulted in a verdict for the plaintiffs for a partial loss.